UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: **08-22261-CIV-MORENO**

MICHAEL I. GOLDBERG, in his capacity as court-appointed Receiver for Worldwide Entertainment Group, Inc., a Delaware corporation, The Entertainment Group Fund, Inc., a Florida corporation, and other affiliated entities,

    Plaintiff,

vs.

PARIS HILTON ENTERTAINMENT, INC., a California corporation, and PARIS HILTON, an individual,

    Defendant.
_____/

## ORDER PRECLUDING RELIANCE DAMAGES AND DIRECTING FURTHER BRIEFING ON RESTITUTION DAMAGES

PLAINTIFF Michael I. Goldberg, as a court appointed Receiver, has been assigned any claims and causes of action that Pledge This, LLC may have against Defendants Paris Hilton Entertainment, Inc. and Paris Hilton individually. In his capacity as a Receiver, Goldberg filed a complaint for breach of contract against both Defendants. Goldberg claims that Paris Hilton, a celebrity promoter, failed to keep her end of the bargain, set in a written contract, where Ms. Hilton promised to promote the film *National Lampoon's Pledge This!*, in which she played the lead role. The Court conducted a two-day bench trial to resolve the factual dispute on whether Paris Hilton breached the promotion and publicity clause of the agreement, for which Ms. Hilton received $1 million.

The film, independently produced and hardly destined for critical acclaim, nevertheless

appeared likely to, at least to the investors, make money due to the "Paris Hilton" brand. The movie first enjoyed a short, limited theatrical release before going to DVD distribution on December 19, 2006, but never made money. Thus the Receiver, on behalf of the investors, seeks to recoup the $8.3 million cost of producing the film, including the $1 million paid to Paris Hilton for "acting" and "executive producer services" (see Plaintiff's Exhibit 2).

The Defendants argue that Ms. Hilton promoted the film prior to the movie hitting the theaters, and that the producers of the film made requests for promotional interviews and appearances in Japan and Europe while she was not professionally available. Paris Hilton further contends that *Pledge This!* flopped economically because of the inexperience of the producers, and for their failure to properly and successfully market the movie. Thus, she contends that any economic loss was not due to her failure to promote. Rather, she strenuously argues she did promote the film, and no further appearances by her would have overcome the producers' failure to properly promote it.

In any event, even if Ms. Hilton had breached the contract, the damages claimed - the cost of production - are based on speculation. One never knows how much a movie may make, and in fact most independent films not tied to the well-known studios fail to make money.

Voluminous emails have been introduced into evidence regarding the requests for Paris Hilton to be interviewed in Japan, Austria, the United Kingdom, and at talk shows in the United States and even in Russian publications. The Receiver specifically alleges breaches of the promotion clause on the failure to promote on:

- **December 5, 2006**, for failure to agree to publicize the film while in Japan, or upon her return to the Los Angeles area;
- **December 15, 2006**, for failure to agree to publicize the film while in Japan;

- **December 21, 2006**, for failure to agree to an interview with the Russian edition of FHM magazine;
- **January 5, 2007**, for failure to agree to appear on either The Late Show with David Letterman or The Tonight Show with Jay Leno;
- **January 29, 2007**, for failure to agree to interviews with Austrian and German television outlets while in Vienna;
- **February 23, 2007**, for failure to agree to telephone interviews in connection with an MTV/VH1 satellite radio tour;
- **February 27, 2007**, for failure to agree to provide interviews to eight United Kingdom publications;
- **March 8 and 14, 2007**, for failure to agree to provide interviews with two specific British publications, through written questions and answers;
- **April 5, 2007**, for failure to agree to an appearance in Japan in May 2007 to publicize the DVD release in that country; and
- **February 23, 2007**, for failure to agree to a proposed MTV/VH1 interview.

There are specific allegations for each one of these requests for Ms. Hilton to promote *Pledge This!*, namely her failure to comply within the 72 hours provided in the contract. There are also specific responses and defenses to each request, all invoking either Paris Hilton's availability or the reasonableness of the requests.[1] The Court is asked to make specific findings of fact and separate conclusions of law on the reasonableness of the requests, or whether Paris Hilton's "handlers" and agents intentionally breached the contract by not notifying her of the requests and not responding to the requests on a timely basis, i.e. within 72 hours. In making those findings the Court would have to assess the credibility of Ms. Hilton, who testified live and that of her handlers, Jason Moore, Lori Glass and Alanna McCarthy, who testified by deposition.

The Court is indeed prepared to make those findings pursuant to FED. R. CIV. P. 52(a). However, the Court finds that even if the Receiver were to show that some of the requests for

---

[1] Much time was spent on Paris Hilton's busy schedule, including how long it takes for Paris Hilton to do her hair (over 3 hours), whether she could promote *Pledge This!* while visiting Japan and Austria to promote other products, or whether she should have spent Christmas with her family in Hawaii instead of promoting the movie.

promotion were indeed reasonable and that Paris Hilton and her "handlers" appeared to be less than enthusiastic in promoting the film *Pledge This!* and instead failed to timely respond, the Receiver simply cannot prove his reliance theory of damages. Nevertheless, the Receiver posits an alternative theory of restitution damages. The Court therefore directs the Plaintiff to further brief which portion of the $1 million payed to Ms. Hilton specifically compensated her for the promotion of the DVD release only. In doing so, the Receiver must specify where in the record in the bench trial or in the discovery process there is support for an allocation of promotional damages linked to the DVD distribution only. A list of witnesses and exhibits and a brief description of the testimony about this issue must be filed no later than **August 26, 2009**. The Defendants shall respond no later than **September 11, 2009**.

### Reliance Damages

Goldberg premises his primary theory of damages on reliance; he posits that the producers of *Pledge This!* relied on Ms. Hilton's future promotion of a DVD release when they spent $8.3 million making the film. After conducting a bench trial in this case and reviewing the evidence before it, the Court finds this theory entirely speculative and unsupported by the facts.

"Although not the normal measure of damages," New York law does award damages where a plaintiff incurred expenses in "reasonable" reliance on the defendant's performance. *See, e.g., V.S. Intern., S.A. v. Boyden World Corp.*, 862 F.Supp. 1188, 1198 (S.D.N.Y. 1994). Nevertheless, a plaintiff must demonstrate that "damages were caused by and are directly traceable to the [defendant's] breach." *Bausch & Lomb Inc. v. Bressler*, 977 F.2d 720, 731 (2nd Cir. 1992) (applying New York law) (internal citations omitted). Even plaintiffs seeking reliance damages must establish this causal link. *Lifewise Master Funding et al. v. Telebank*, 374 F.3d 917, 933 (10th Cir. 2004)

(applying New York law). "When a plaintiff fails to come forward with evidence sufficient to demonstrate damages flowing from the alleged breach and relies instead upon wholly speculative theories of damages, dismissal of the breach of contract claim may be in order." 28 N.Y. Pr., Contract Law §22:5.

Goldberg argues that the Defendants actually bear the burden of proof on causation. He points to *American Capital Corp. v. FDIC*, 472 F.3d 859 (Fed. Cir. 2006), under which the Federal Circuit upheld reliance damages for a plaintiff that "demonstrated the [defendant] had reason to know the loss would occur if it breached the contract, and the [defendant's] breach did, in fact, result in significant losses." *Id.* at 869. Nevertheless, *American Capital Corp.* merely shows that causation can be inferred from a breach committed in the face of a foreseeable loss. This harmonizes with the requirement that a plaintiff prove reliance damages were foreseeable at the time of the breach. *See, e.g., 24/7 Records, Inc. v. Sony Music Entertainment, Inc.*, 566 F.Supp.2d 305, 319 (S.D.N.Y. 2008).

In this case, Goldberg has failed to satisfy the Court that any of his alleged reliance damages were foreseeable. He set forth no compelling evidence that the Defendants' various alleged breaches caused foreseeable damages. Crucially, Goldberg could point to no actual contractual provision, and could proffer no specific testimony from anyone who actually decided to invest in the movie, that Ms. Hilton's prospective promotion of the DVD release, in particular, induced their investment.

Mr. DiLorenzo, one of seven executive producers for the film, testified that Pledge This LLC and Pledge This Holdings relied on Ms. Hilton later doing DVD promotion when they produced the film. Nevertheless, Mr. DiLorenzo could not and did not argue that he specifically was induced to invest $8.3 million. Neither could Mr. DiLorenzo demonstrate in any compelling manner the precise extent to which *Pledge This!* lost money directly because of Ms. Hilton's alleged failure to promote.

For his part, Mr. Goldberg argued by affidavit that he directed $137,000 to be spent from receivership funds on post-production work, in reliance on Ms. Hilton's future DVD promotion. This argument also fails to establish direct causation. Mr. Goldberg may show that he directed expenditures, but he can only speculate that the film failed to recoup that expenditure because Ms. Hilton failed to adequately promote the DVD release. Furthermore, he certainly cannot show that any such speculative failure was foreseeable to Ms. Hilton. This is especially true given that the film's limited theatrical release netted revenue far in excess of the expenditures Goldberg directed, and that the theatrical release itself depended on the very post-production work Goldberg agreed to fund. In short, Goldberg's reliance theory necessarily speculates that Ms. Hilton's promotion of the DVD would have lead to a recoupment of costs. Not only is this speculation disallowed by the law on reliance damages, it also flies in the face of the facts of the case.

Contrary to Goldberg's speculative theory, the Court finds compelling evidence in the record that *Pledge This!* lost money because the film's inexperienced producers hastily cobbled together a wholly inadequate marketing plan. The inexperience and relative ineffectiveness of the film's producers starkly clarifies the speculative nature of Goldberg's reliance theory. Had the producers of the film actually *relied* on Ms. Hilton promoting the DVD release of the film when they invested and spent money, logically they would have developed a more comprehensive program of DVD promotion. In fact, Ms. Hilton's testimony forcefully contrasted the producers' marketing of this film with other films she has appeared in during her career. *Pledge This!* enjoyed a very limited theatrical release and no standard press junket. It therefore performed poorly in theaters and went straight to DVD. At that point, the producers still had no comprehensive, effective marketing plan in place. Instead, they sent scatter-shot requests to their principal star in the hopes that she could find

time to promote a sinking ship.

In short, Mr. Goldberg's reliance theory cannot overcome the facts of the case. Any causal connection between Ms. Hilton's alleged breaches and the financial ruin of the film are wholly speculative, and therefore cannot entitle Goldberg to recovery.

### Restitution Damages

Goldberg proffers restitution as an alternative theory of recovery. Accordingly, he argues that the Court should disgorge the Defendants of the $1 million Ms. Hilton received under the contract. Prior to the trial, Goldberg submitted a supplemental expert report on this theory of damages, and the Defendants filed a motion *in limine* to disallow it as untimely and inadmissible. The Court denied that motion *in limine* in its Omnibus Order, with leave to reargue after the trial on liability.

The Court has concluded the trial on liability and foreclosed recovery on a reliance theory. Although these "Restitution" damages may also be speculative, the Court will allow the Receiver to describe the evidentiary grounds to determine which portions of the $1 million paid to Ms. Hilton were in consideration for her various roles in this project, including, for example, her acting services ($65,000 according to Plaintiff's Exhibit 2) and her executive producer services ($935,000 according to Plaintiff's Exhibit #2). If the Receiver were to be successful on this restitution claim, the Court would need to decide how much of the $935,000 was for the use of her name and likeness in promoting the DVD immediately before and within a reasonable time after the DVD release on December 19, 2006 versus the promotion she performed leading up to the theatrical release of the movie. The Court will allow the Receiver to submit the list of witnesses and the short description of their testimony plus the exhibits previously described in this order no later than August 26, 2009. In that submission the Receiver shall include the methodology requested of the Court in assessing

a portion of the damages. For example, if the Court were to find that Ms. Hilton breached the contract on one of the requests made, how much restitution is the Receiver entitled to for that one event missed?

Thus, before it issues specific findings of fact and conclusions of law on the credibility of the various witnesses and the liability of the Defendants generally, the Court will provide the parties an opportunity to submit briefs on Goldberg's restitution theory. The parties should limit their briefs to this discrete issue, including whether Goldberg's restitution theory and supplemental expert report should be excluded as untimely and inadmissible, but also and especially the specific factual and legal merits of the theory itself. The Plaintiff may submit his brief up to and including **August 26, 2009**, with responses due from the Defendants by **September 11, 2009**.

DONE AND ORDERED in Chambers at Miami, Florida, this 17 day of August, 2009.

FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies provided to:
Counsel of Record

# EXECUTED

PLEDGE THIS, LLC
c/o Cowan DeBaets Abrahams & Sheppard, LLP
41 Madison Avenue, New York, New York 10010

August 23, 2004

Paris Hilton Entertainment, Inc.
f/s/o Paris Hilton
c/o United Talent Agency
9560 Wilshire Blvd.
Beverly Hills, CA 90212

RE: PLEDGE THIS, LLC –w- PARIS HILTON ENT., INC.
AMENDMENT TO "PLEDGE THIS!" AGREEMENT

Ladies and Gentlemen:

When signed in the places provided hereinbelow, this letter (the "First Amendment") shall confirm the following amendments to and in connection with the referenced agreement (the "Agreement"):

1. Notwithstanding anything to the contrary contained in the Agreement, the parties agree that the fee called for thereunder shall be allocated, $65,000 for acting services and $935,000 for executive producer services.

2. Artist shall be entitled to receive an additional credit as "Executive Producer" in first position of all executive producers, on a single card.

3. Capitalized terms used herein shall have the meanings ascribed them in the Agreement.

4. All non-conflicting terms and conditions set forth in the Agreement remain in full force and effect and the parties hereby ratify and reaffirm all of the same.

Very truly yours,
PLEDGE THIS, LLC ("Company")

By Juan Carlos Zapata, a Manager

AGREED TO AND ACCEPTED:
PARIS HILTON ENTERTAINMENT, INC.

By Paris Hilton, President



HIL 000000548

# EISNER & FRANK

ATTORNEYS AT LAW

MICHAEL EISNER*+
DARIN FRANK
RANDALL FRK
ASHA DHILLON
ANTHONY J. CALLIE
JILL L. VARON
KEITH SUTTON
AND ASSOCIATES

9601 WILSHIRE BOULEVARD, SUITE 700
BEVERLY HILLS, CALIFORNIA 90210

TELEPHONE (310) 855-3200
FACSIMILE (310) 855-3201

* A PROFESSIONAL CORPORATION
+ ADMITTED TO CALIFORNIA AND NEVADA

October 11, 2006

<u>Via Email</u>

P.J. Shapiro, Esq. (pjs@zbbfgs.com)
Ziffren, Brittenham, Branca, Fischer, Gilbert-Lurie,
Stiffelman, Johnson, Lande & Wolf, LLP
1801 Century Park West
Los Angeles, CA 90067

Re: "Pledge This!" / Paris Hilton Entertainment, Inc. f/s/o Paris Hilton

Dear P.J.:

Reference is hereby made to that certain Deal Memorandum and attached Standard Terms & Conditions (the "**Agreement**") regarding the motion picture currently entitled "Pledge This!" (the "**Picture**"), a copy of which is attached hereto as **Exhibit A**, pursuant to which Paris Hilton Entertainment, Inc. ("**Lender**") has been engaged by Pledge This, LLC ("**Company**") to provide the acting services of Paris Hilton ("**Artist**") on the terms and conditions more further described in the Agreement. Capitalized terms used but not specifically defined herein shall have the meanings set forth in the Agreement.

Now, therefore, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Company, Lender and Artist hereby agree as follows:

1. <u>Unrated Version of DVD</u>. Lender and Artist hereby agree and acknowledge that an "unrated" version of the Picture in video format will be released simultaneously with the rated version of the Picture. Company acknowledges that the word "unrated" shall not cover Artist's image on any packaging and/or advertising materials associated with the video release of the Picture.

2. <u>Deleted & Extended Scenes</u>. Company agrees that any deleted and/or extended scenes included as "bonus materials" on DVD version of the Picture shall not contain any nude scenes that were not filmed during production of the Picture. Further, Company agrees that: (i) Artist shall not appear nude in any deleted and/or extended scenes; and (ii) within such deleted and/or extended scenes, Artist's image shall not appear within a frame of the Picture that also contains nudity.



G00951

P.J. Shapiro, Esq.
October 11, 2006
Page 2

    3.    Box Art. In the event that the image of any member of the cast of the Picture appears on "Video Items" in connection with the domestic video release of the Picture, Company agrees that Artist's image shall also appear in the forefront of all such Video Items. For purposes herein, "Video Items" shall be defined as videocassettes, videodiscs, DVDs and other home video devices and the covers, packages, containers or jackets therefore.

    4.    DVD Menus. Company agrees that Artist's image shall not appear on any menu screens included on the DVD version of the Picture that also contain nudity.

    5.    Premiere. Lender agrees to cause Artist to attend the domestic theatrical premiere of the Picture on October 26, 2006 in Chicago, IL. Transportation, accommodations and expenses shall be provided to Artist in accordance with the Agreement.

This side letter agreement shall become effective upon its execution, which may occur in one or more counterparts, and by facsimile transmission, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

Very truly yours,

Darin Frank

ACCEPTED AND AGREED BY:

Pledge This, LLC ("Company")            Paris Hilton Entertainment, Inc. ("Lender")

By: _____                      By: _____
Name: Lin DiLorenzo                      Name: Paris Hilton
Title: MANAGER                           Title:

                                                       Paris Hilton ("Artist")

                                                       By: _____

G00952